### 11200

#### MISHOE v. A. C. L. R. CO.

#### (117 S. E., 217)

Appeal and Error—In Action Against Railroad, Instruction Involving Federal Law Insinuating That Congress is in Collusion With Railroads Held Prejudicial Error.—In an action against a railroad, in which a question of inter-state journey was involved, instructions from which the jury might infer that the railroads and Congress are in collusion to protect the railroads from the consequences of their unlawful invasions of the rights of the travelling public *held* prejudicial error.

Before Memminger, J., Horry, April, 1921. Reversed.

Action by Walter H. Mishoe against Atlantic Coast Line Railroad Co. Judgment for plaintiff and defendant appeals.

The complaint, answer, and exceptions, referred to in the opinion of the Chief Justice, follow:

## COMPLAINT

The complaint of W. L. Mishoe, by H. H. Woodward, his attorney, respectfully shows unto the Court:

(1) That the defendant, Atlantic Coast Line Railroad Company, is a corporation duly created and organized by law, and as such it owns and operates a line or lines of railway for the carriage of passengers between Columbia, S. C., and Conway, S. C., and was engaged as a common carrier of passengers over such lines upon all of the dates hereinafter set forth, and is still so engaged at the date of this complaint.

(2) That on or about the 24th day of February, A. D. 1917, the plaintiff was in the city of Columbia, in the state aforesaid, attending to his duties as a member of the General Assembly of said state, when early in the morning of that day he received a telegram informing him of the serious illness of his daughter at the home of the family in Conway; that in the early morning of said day, desiring to reach his home as quickly as possible owing to said illness, the plaintiff purchased a ticket of the defendant at its station and office in the city of Columbia through to Conway, paying the defendant the full amount and price which the defendant charged him for such carriage, and thereupon became a passenger upon the train of the defendant, fully expecting to arrive thereby at Conway, in accordance with the published and advertised schedules of the defendant, not later than 1 o'clock on that day.

(3) That upon the arrival of defendant's train, upon which plaintiff was riding, at the station of Florence on said line of railroad, the defendant, as plaintiff is informed and believes, through its negligence and carelessness, or the negligence and carelessness of its agents, servants, and employees, was very late in making its said schedule; and the plaintiff, being anxious to reach his destination for the reason aforesaid, informed the defendant, its servants, agents,

and employees, of his anxiety and the reason therefor, and inquired of them if the defendant's trains would make connection at Chadbourn, a regular station on said line of travel where cars were changed for Conway; and the plaintiff alleges that said defendant, its agents, servants, and employees at that time wilfully and wantonly carelessly neglected and refused to give the plaintiff any information concerning the connection of said trains.

(4) That as said train upon which plaintiff was riding was leaving the city of Florence plaintiff applied to the agent of defendant, viz., the conductor of said train, and requested that said conductor upon arriving at the next station should wire ahead and arrange to hold the train at Chadbourn so, that plaintiff would be sure of making the connection and reach his destination as quickly as possibly, and the said conductor promised and agreed to attend to the same.

(5) That plaintiff is informed and believes that the defendant, its servants, agents and employees, willfully, wantonly and in a careless and negligent manner failed and refused to wire ahead as they agreed to do, and failed to obtain or furnish any information to the plaintiff, but a little later, as the train was at the station called Pee Dee on said line, the said conductor told the plaintiff that he would find out later on and let the plaintiff know at Marion, S. C., another station on said road, and the plaintiff then told the said conductor that if he found that the train would not be held for him at Chadbourn, then the plaintiff would take and automobile at Marion, S. C., and endeavor to reach his home in that way.

(6) That, as plaintiff is informed and believes, the defendant, its agents, servants, and emplopees, in a willful, wanton, careless, and negligent manner failed and refused still to obtain and give him any information concerning said train, well knowing, as plaintiff then and there informed them, of the circumstances making it imperative that plaintiff should reach his destination, and failed to inform him

as to the result in making connections by reason of their careless and negligent failure to run their trains on time, and when said train had reached the station of Marion the conductor approached the plaintiff and told him that defendant's train had already at that time left Chadbourn for Conway, and advised the plaintiff to get off of defendant's train at that point of Marion, and take a private conveyance through the country, if he wanted to reach home that night, which statement of fact, viz., that said train had left Chadbourn, was false, and, as plaintiff is informed and believes, was known to be false to the defendant, its agents, servants, and employees, at the time, but it was not until afterwards that plaintiff learned that said statement was false.

(7) That the said day, viz., the 24th day of February, 1917, was bitterly cold and a freezing wind blowing, there had been recent heavy rains, and the road was in a frightful condition, of all of which the defendant, its agents, servants, and employees had knowledge, but as a result of what the conductor said to the plaintiff as aforesaid and which was done, as plaintiff is informed, willfully and wantonly, carelessly and negligently, the plaintiff, believing said statements to be true, left the defendant's train and hired an automobile, which exposed him to the severe weather along bad country roads over a distance of more than 30 miles; that the car broke down before going very far on the way, and the driver refused to continue the journey on account of the excessive cold and the roughness of the road; that after laboring and suffering in the mud and the severe cold, the plaintiff succeeded in hiring another automobile along the road, and this in turn only carried plaintiff a few miles on the way, and refused to take him any farther, when the plaintiff finally succeeded in employing a third man, and finally reached his home at Conway, S. C., at 8 o'clock on the night of said February 24, 1917, and later the plaintiff learned that the defendant's train was held at Chadbourn, N. C., for other passengers, who it brought into Con-

way at 3 o'clock in the afternoon on that day; and that by
reason of the cold and exposure, the anxiety, suffering, and
inconvenience, which was caused as hereinbefore explained
by the plaintiff by the willful, wanton, careless, and negli-
gent acts hereinbefore set forth, he contracted a severe cold
and suffered a severe chill, and upon his arrival at home had
to call a physician to attend him, was made very sick, and
suffered a serious nervous breakdown, and suffered great
mental and physical anguish, was confined to his bed for a
long time, and was prevented from attending to his usual
official duties, and spent large sums of money in trying to
get himself well, and, as he verily believes, was permanently
injured, and still suffers from the effects thereof, by means
of all of which, as hereinbefore in this complaint set forth,
the plaintiff has been damaged in the sum of $1,500.

(8) That all of the acts in relation to plaintiff's passage
in regard to making the schedule of the defendant and the
information in regard there to as referred to, and in relation
to obtaining information for plaintiff, were, as plaintiff is
informed and believes, done willfully, wantonly, carelessly,
and negligently, in reckless disregard of the rights of the
plaintiff, and the aforesaid injuries of the plaintiff were
caused by said acts, which damaged him in the sum afore-
said.

Wherefore plaintiff demands judgment against the de-
fendant for the sum of $1,500 and for the costs of this
action.

### Answer

The defendant, not waiving, but specifically reserving, its
right to move as per notice already served for a motion re-
quiring plaintiff to amend his complaint by striking there-
from certain irrelevant and redundant matter, answering the
complaint herein:

(1) Admits the truth of the allegations contained in par-
agraph 1 thereof.

(2) Has neither knowledge nor information sufficient to form a belief as to the truth of the allegations contained in paragraph 2 thereof, except such as allege that plaintiff on some day in the month of February, 1917, purchased a ticket entitling him to passage over defendant's line from Columbia, S. C., to Conway, S. C., by way of Chadbourn, N. C.

(3) Denies the truth of the allegations contained in paragraphs 3, 4, 5, 6, and 8 thereof.

(4) Admits that the date upon which the ticket in question was purchased by defendant was a severely cold day, and that defendant's train running from Chadbourn, N. C., to Conway, S. C., was held at Chadbourn until the arrival there of defendant's train running from Columbia, S. C., to Wilmington, N. C., but denies each and every other allegation of paragraph 7 of the complaint.

## EXCEPTIONS

(1) The Court erred, it is respectfully submitted, in refusing to direct a verdict for the defendant upon the motion made therefor, on the ground that there was no testimony tending to show that the delay of the train on which plaintiff took passage was due to negligence of the defendant.

(2) The Court erred, it is respectfully submitted, in refusing to direct a verdict for the defendant upon the motion made therefor, on the ground that all the testimony shows that the delay of the train on which plaintiff was a passenger was due to waiting on connections, and not to negligence.

(3) The Court erred, it is respectfully submitted, in refusing to direct a verdict for the plaintiff upon the motion made therefor, on the ground that all the testimony shows that the information furnished plaintiff by the conductor as to the probability of missing the Conway connection was furnished in good faith in the exercise of his best judgment, based upon conditions existing at the time, and that the defendant should not be held liable on account of the fact that

due to subsequent occurrences the conditions were changed
to such an extent that the connection was actually made.

(4) The Court erred, it is respectfully submitted, in re-
fusing to direct a verdict for the plaintiff upon the motion
made therefor, on the ground that all of the testimony shows
that the injury, if any, sustained by plaintiff, was due, not
to negligence of the defendant, but to an intervening cause,
to wit: plaintiff's own act in attempting to drive through
the country on a bitterly cold day, instead of going to his
destination by rail.

(5) Because the Court erred, it is respectfully submitted,
in stating to the jury in his charge that the Court found
"itself surrounded by a mass of technical law which it has
to pass upon, because in a case like this, where the journey
is through another state, we are called upon and required
to apply certain principles of the law of the United States,
passed by Congress and construed by Federal Judges, and
therefore the burden is thrown upon a State Judge of not
only being familiar with, and being able to explain to the
jury, the law of one state, but the laws of the United States,
as construed and interpreted by the United States Courts to
the different departments of the State Governments"; such
statement having no bearing whatsoever upon the law of the
case, and having a tendency to prejudice the minds of the
jury against the defendant, to its injury.

(6) Because the Court erred, it is respectfully submitted,
in stating to the jury in his charge that, "under the act of
Congress, the railroads having such a grasp upon Congress
and being able to get through almost any legislation, under
the law and decisions thereunder by Federal Judges, if the
transit of a passenger is through another state, it does not
matter how slightly it may be, the journey is denominated
an interstate journey.  *  *  *  The Federal Law says,
and we are bound by that law, that in such a case the party
injured, even though the cause of his injury was willful,
wanton, and reckless, *  *  * bringing about as a prox-

imate cause his injury, he cannot recover more than his
actual damages, unless it is shown on his behalf that the
conduct of the railroad company in committing the willful,
wanton, and reckless act, was" directly authorized by the
officers directing the railroad; the statements in reference to
the railroads having obtained such a grasp upon Congress,
and being able to get through almost any legislation, being
entirely unsupported by any evidence in the case, and merely
the gratuitous opinion of the trial Judge, and having a ten-
dency to prejudice the minds of the jury against the defend-
ant to its injury.

(7) The Court erred, it is respectfully submitted in charg-
ing the jury to the effect that, if one of the high officials
were to walk up to a conductor and say to him, "I authorize
you to throw this passenger off the train," the party could
get punitive damages, or that, if it should be shown that
though such person was not present and did not directly
authorize the act, yet he acquiesced in the conduct of the
conductor subsequently, in such a case the injured party
might recover punitive damages; there being no testimony
whatever tending to show either authority for or acquies-
cence in any alleged willful, reckless, or grossly negligent
conduct, and the charge tending to prejudice the minds of
the jury against defendant to its injury.

(8) The Court erred, it is respectfully submitted, in not
charging defendant's first request to charge; such request
containing a correct statement of the law applicable to the
issues, and the refusal of the Court to give the charge after
reading it tending to prejudice the defendant to its injury.

(9) The Court erred, it is respectfully submitted, in re-
fusing to charge defendant's fourth request, such request
containing a correct statement of the law applicable to the
issues, and also in stating to the jury, in connection with
this request, "I have a great admiration for the counsel who
has presented the case on behalf of the Atlantic Coast Line
Railroad, and I am satisfied that he understands what that

means, but it is beyond my comprehension"; these remarks and his refusal to give the request to charge being prejudicial to the defendant to its injury.

(10) His Honor erred, it is respectfully submitted, in charging plaintiff's second request to charge, and in thereby submitting to them as one of the issues in the case an issue as to a willful, intentional, malicious act on the part of the conductor, and as to a willful, high-handed, outrageous, intentional invasion of plaintiff's rights, intentionally and knowingly misleading on purpose; there being no testimony whatever tending to show any such conduct on the part of the conductor, and such charge having a tendency to lead the jury to believe that there was evidence of such conduct to defendant's prejudice.

(11) The Court erred, it is respectfully submitted, in charging plaintiff's fourth request to charge, and in thereby submitting to the jury the issue as to a deliberate intent on the part of defendant to mislead the plaintiff; there being no evidence whatever to sustain such a charge, and this instruction having a tendency to lead the jury to believe that there was such evidence to the prejudice of defendant's rights.

(12) His Honor erred, it is respectfully, submitted, in stating to the jury at the conclusion of his charge, "As you probably know, practically all these cases are carried to the Supreme Court, and it is extremely difficult for a Judge to keep up with all these points of law, and not make some mistake in charging the jury on these points of Federal Law. Nevertheless, we have to do the best we can. It is as difficult as for a camel to go through the eye of a needle to charge this kind of a case, and not make some mistake before the tribunal sitting in Columbia, which the plaintiff had a part in choosing, having been a member of the Legislature so long"; such charge being entirely without bearing upon any of the legal issues arising in the case, and tending to prejudice the jury against the defendant to its injury,

and having no tendency to give the jury any aid in determining the facts of the case.

(13) The Court erred, it is respectfully submitted, in generally charging the jury so as to indicate a prejudice and bias on the part of the Court against the defendant, to its injury.

*Messrs. F. L. Willcox* and *C. P. Quattlebaum,* for appellant cite: *Schedule and connections of train not guaranteed:* 84 S. C., 171.

*Mr. H. H. Woodward,* for respondent, cites: *Negligence of railroad in giving wrong information to passenger was for the jury:* 102 S. C., 287; 91 S. C., 71; 96 S. C., 456; 150 S. C., 423.

April 21, 1923.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

The plaintiff was notified by a telegram that his child was sick at home. The plaintiff was in Columbia in attendance upon the Legislature, and his child was sick at his home in Conway. In order to go from Columbia to Conway by rail, it is necessary to go to Chadbourn in North Carolina and change cars for Conway. When the train got to Florence, it was two hours late, and the plaintiff was uneasy about making connection at Chadbourn, and made inquiry at Florence. He could learn nothing in Florence about the matter. After leaving Florence, the plaintiff appealed to the conductor to find out for him if the train would be held at Chadbourn. The plaintiff says that at Marion he was informed that the train to Conway had left Chadbourn, and he would have to wait at Chadbourn for a later train, and be delayed several hours; that the conductor told him that, if he was obliged to be at home within a reasonable time, it would be well to get off of the train and go across from Marion to Conway by automobile. The plaintiff got off of the train at Marion and engaged an automobile to take him

across to Conway. The automobile broke down on the way.
The day was exceedingly cold, and the roads were in a bad
condition. The driver of the automobile refused to go any
further. The plaintiff succeeded in getting another auto-
mobile. Automobile No. 2 broke down, and the plaintiff
procured a third automobile to finish the journey. The
plaintiff spent hours on the road, and suffered with the cold
and was made sick by the exposure. He did not arrive
at home until 8 o'clock at night. It seems that, while the
train between Chadbourn and Conway did leave the station
at Chadbourn, as reported, the engine was delayed in the
yard just after it started, and it took so long to fix it that,
after it was fixed, it waited for the train which the plaintiff
had left at Marion, and enabled the other passengers for
Conway to reach Conway at 3 o'clock, or five hours ahead
of the plaintiff. This action is brought for the sickness
of the plaintiff, produced by his exposure between Marion
and Conway. The jury found for the plaintiff, and the
defendant appealed.

I. The first assignment of error that needs consideration
is the charge of his honor, the presiding Judge. The charge
reads in part: "Mr. Foreman, and Gentlemen of the Jury:
In the trial of this case, in which Walter L. Mishoe seeks
damages from the Atlantic Coast Line Railroad Company,
the Court finds itself surrounded by a mass of technical law
which it has to pass upon, because in a case like this, where
the journey is through another state, we are called upon and
required to apply certain principles of the law of the United
States, passed by Congress and construed by Federal Judges,
and therefore the burden is thrown upon a State Judge of
not only being familiar with and being able to explain to the
jury the law of one state, but the laws of the United States,
as construed and intrepreted by the United States Courts
to the different departments of the State Governments.
Nevertheless the Courts have to pass upon these matters,

and to do the best they can and try to lay the law before the jury."

"The first idea to get into your mind, gentlemen, is that Mr. Mishoe is coming in here and claiming damages, both actual and punitive, against the Atlantic Coast Line Railroad Company, based upon certain charges, which he alleges to have been negligent conduct on the part of the railroad company, and that, as a proximate result of these alleged negligent acts, or any one of them, he was injured. And furthermore, on the basis that the charges made against the railroad company were not only negligent, but willful, wanton, and reckless, therefore he claims punitive as well as actual damage."

"Now, we will dispose of the matter of punitive damage first under the Federal Law, in order that we may get clearly that point."

"Under the state law, which was in force until recently, the idea was that, where an act was committed that was willful, wanton, and reckless, and as a proximate result of it there was an injury sustained, in that case a jury, under the state law, could find not only actual damages, but punitive damages, to punish the railroad for committing such willful, wanton, and reckless acts, and to prevent them from committing such like acts in the future."

"Under the Act of Congress, the railroads having such a grasp upon Congress and being able to get through almost any legislation, under the law and decisions thereunder by Federal Judges, if the transit of a passenger is through another state, it does not matter how slightly it may be, the journey is denominated an interstate journey, involving more than one state, and the Federal Law says, and we are bound by that law, that in such a case as that the party injured, even though the cause of his injury was willful, wanton, and reckless conduct on the part of the railroad, bringing about as a proximate cause his injury, that he cannot recover more than his actual damages, unless it is shown

on his behalf that the conduct of the railroad company in committing the willful, wanton, and reckless act resulting in the direct injury to the person was conduct authorized by the officers directing the railroad—authorized directly by them  As if one of the high officials were to come up to a conductor and say to him: 'I authorize you to throw this passenger off the train.'  There you have the direct authorization and direction to an official to perform the act by one authorized to do so.  In such an event as that, the party could get punitive damages by reason of the fact that the act on the part of the official which brought about the injury by throwing the man off the train was done by the direct direction of one in control.  Or it may be shown that, though such a person was not present, and did not directly authorize the act or wrong whereby the injury was incurred, yet if the higher authorities or parties in charge of the railroad, acquiesced in the conduct of that official subsequently, and of such acquiescence you are to judge from the testimony, whether, though the wrong conduct was not done by the official in control of the system, yet that there was ratification after it had been done."

· The jury might infer from this statement that the railroads and Congress are in colusion to protect the railroad from the consequences of their unlawful invasions of the rights of the traveling public.  The statement is not only unlawful, but. highly prejudicial to the appellant.  Generally, a Judge charges a jury offhand, as it is called, and he does not say just what he means, and it is doubtless true that his Honor did not intend to reflect upon Congress, or the class to which the defendant belonged; but none the less it is true that it was calculated to prejudice the defendant, at least in the estimation of the jury, and was reversible error.

II. I think a verdict should have been directed for the defendant.  The defendant undertook to carry the plaintiff by rail safely from Columbia to Conway, so far as hu-

14—S. C.—124

man care and prudence could provide.   The plaintiff, know-
ing the climatic conditions as well as the defendant's agents
and servants did, voluntarily left the train at Marion and
undertook to go across country to Conway.   The defendant
did not produce the extreme cold from which the plaintiff
suffered.   It did not own the highway on which the plain-
tiff undertook to travel.   The defendant could not repair
any defects therein.   No agent of the defendant selected
the automobiles or their drivers.   The whole injury com-
plained of was incurred on the trip from Marion to Conway,
after the plaintiff had severed his connection with the de-
fendant, and due to causes over which the defendant had
no control.   A suitable automobile and competent driver
did enable the plaintiff to complete his journey, which the
other automobiles and their drivers could not, or would not,
complete.   No injury to the sick child was alleged or proven,
but the injuries were due solely to the act of God, and the
inefficiency of the means selected by the plaintiff.   I see no
ground upon which a liability of the defendant can be based.
The plaintiff may have received injury, and yet the defend-
ant not be liable.   The wrong must be the proximate cause
of the injury.   The proximate cause here was the cold, the
condition of the highway, the automobiles, and their drivers.

The judgment is reversed.

Messrs. Justices Cothran and Marion concur.

Mr. Chief Justice Gary and Mr. Justice Watts dis-
sent.

Mr. Justice Marion : I concur in the view that there
was reversible error in the charge as imputed by appellant's
first assignment of error.   I am not prepared to agree that
the verdict should have been directed for defendant.

Mr. Chief Justice Gary: This is an action for dam-
ages, alleged to have been sustained by the plaintiff through
the wrongful acts of the defendant.   The jury rendered a
verdict in favor of the plaintiff for $500, and the defendant

appealed upon exceptions, which will be reported together with the complaint and answer.

*First, Second and Third Exceptions.* The testimony as to the questions of fact mentioned in these exceptions was susceptible of more than one inference; therefore they were properly submitted to the jury.

*Fourth Exception.* The grounds of the motion for a directed verdict were as follows:

(1) "Because there is no testimony to show that the delay of the train on which the plaintiff was a passenger was due to negligence of defendant." .

(2) "Because all the testimony shows that the delay of the train on which plaintiff was a passenger was due to waiting on connections and not to negligence."

(3) "Because it appears from all the testimony that the information furnished the plaintiff by the conductor as to the probability of missing the Conway connection was furnished in good faith, in the exercise of his best judgment based upon the conditions existing at the time, and because defendant should not be held liable because, due to subsequent occurrences, conditions were changed to such an extent that the connection was made."

(4) "Because it appears that the injury suffered by plaintiff, if any, was due, not to negligence of the defendant, but to an intervening cause, to wit: plaintiff's own act in attempting to drive through the country on a bitterly cold day, instead of going to his destination by rail."

If the plaintiff had relied, alone, on the alleged negligence of the defendant in causing him to drive through the country on a bitterly cold day, as alleged in paragraph 7 of the complaint, and had failed to prove such allegations, a motion for the direction of a verdict would have been proper. But there are other acts of neglignece, alleged in the complaint, which, if sustained by the testimony, entitled the plaintiff to damages.

*Fifth, Sixth, Seventh, Twelth, and Thirteenth Exceptions.* On hearing the motion to settle the case, his Honor, the Circuit Judge thus explained the spirit in which he used the language assigned as error:

"Practically all of defendant's exceptions seem predicated on assumed prejudice on the part of the Court to the defendant. This the Court positively and emphatically denies. *   *   * Certainly, the weariness of these trials may be sometimes lighted by a little 'badinage' and 'persiflage,' and excuses put forth for a necessarily prosy charge, and some explanation given the jury for why the charge must be halting."

It is incumbent on the appellant, not only to satisfy this Court that there was error, but also that it was prejudicial to the lights of the appellant. The defendant's attorneys have failed to satisfy us of such fact.

*Eighth, Ninth, Tenth, and Eleventh Exceptions.* Rule 5, Section 6, of the Supreme Court, contains the following provision:

"Each exception must contain within itself a complete assignment of error, and a mere reference therein to any other exception then or previously taken, or request to charge, will not be considered."

There was a failure to comply with the requirements of said rule, and these exceptions will not be considered.

(There is an appendix to the record herein, which contains a copy of the order of his Honor, the presiding Judge, settling the case, together with the defendant's notice of appeal therefrom and exceptions. They, however, will not be considered, as they were not argued.)

Mr. Justice Watts concurs.